with the highest responsibility of the judges, which did authorize them, by the process of attachment, to prevent and punish the publication of articles like the one before us; and in this case it would have been the imperious duty of this court to have brought their powers into action by granting this rule, if the legislative power had not taken it away. How far it would have been proper to exercise them would have depended on the cause shown. On the rule, it was a clear, prima facie case for some interference. But as congress has deemed such a power too dangerous to be entrusted to the discretion of judges on a motion, or of a court and jury on an indictment, and have not thought it expedient to give a remedy to a party who has been injured by a publication by authorizing him to bring a suit against the publisher for damages, we have no cognizance of the matter. The means of redress which had before existed have been taken away without the substitution of any other. The law has left the propriety of such publications to the discretion of the editors of public papers, after long experience of the effects of leaving it to the discretion of courts, who assumed high responsibilities in its exercise; while none is imposed on those in whose breasts it now rests. It is the duty of the court to give the law its full operation. It has been enacted deliberately, with full knowledge not only of the course of the common law, the act of 1789, but of the statute law of Pennsylvania on the same subject, passed in 1809, which gives the injured party a double remedy for any injury complained of in a case like this. After taking from the courts of the state the power to punish for contempt, except in certain cases, the law declares that no publications out of court, concerning any cause depending therein, shall be construed into a contempt, &c., "but, if such publication shall improperly tend to bias the minds of the public, the court, the officers, jurors, witnesses, or any of them, on a question pending before the court, every person feeling himself aggrieved by such publication shall be at liberty either to proceed by indictment, or to bring an action at law against the author, printer, publisher, or either of them, and recover thereupon such damages as a jury may think fit to award." 5 Smith, Laws, p. 55.

Thus it appears that, while suitors in the state courts can be protected against publications like this, they are without protection in the federal courts. The legislature of the state deem it both an indictable and an actionable offence. The legislature of the Union deem it neither a contempt of the law, of the court, an offence to the public, or an injury to a party. The rule must be refused, but it is hoped that an appeal to the sense of justice, the magnanimity of the press to abstain from any publication which shall improperly tend to bias the minds of the public, the court, the officers, jurors, or witnesses in any cause while actually under trial before a jury in this court, may not be in vain. Its

conductors should remember that suitors stand unarmed and defenseless before them; that the hands of the court are manacled; that the law of 1831 has placed no arbiter between an editor and a party to a trial, whose life, character, liberty, or property may be put in jeopardy by the influence of the press. The law has taken from him a shield, and from the court the sword. Both must be submissive under the inflictions of the press, be they just or unjust. If it is conducted in the spirit of chivalry, and must be employed on cases depending in the courts, let it be on suitors in state courts, who can meet them in the panoply of the law; not on those who are helpless in this. It is neither manly or generous to assail those who can make no resistance, or inflict an injury for which the sufferer is left without a remedy.

## Case No. 11,351.

POUNDER v. The CAROLINE V. CASEY. [See Case No. 2,421a.]

POUNDER v. PROCEEDS OF THE CAROLINE CASEY. See Case No. 2,421a.

POULSON, The (McCREADY v.). See Case No. 8,734.

## Case No. 11,352.

POUSOT v. LAWRENCE.

[N. Y. Times, April 29, 1857.]

Circuit Court, S. D. New York.    April 28, 1857.

CUSTOMS DUTIES — PROTEST — SCOPE AND SUFFICIENCY—ROSEWOOD FURNITURE.

[Under a protest against paying a given duty on "rosewood furniture," the rates levied on furniture in the same entry made only in part or not at all of rosewood cannot be considered.]

[This was an action at law by George Pousot against Cornelius W. Lawrence to recover back duties illegally exacted by defendant as collector. Verdict was given for plaintiff, subject to the opinion of the court.]

Mr. McCulloh, for plaintiff.
Mr. McKeon, for defendant.

Before HALL, District Judge. The only question was as to the sufficiency of the protests. There were five entries of goods. The first one embraced "rosewood and mahogany furniture, common wood furniture, rosewood furniture, and silk and worsted goods." The protest annexed is "against paying" 40 per cent. duty on rosewood furniture, as specified in his entry, believing it should pay 30 per cent. as cabinet furniture. The other entries and protests are similar.

HELD BY THE COURT: That these protests related to a specific article embraced in the entries. "Rosewood furniture" is a well-known and specific term, and the protests